UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHANCEY FREEMAN,

        Plaintiff,

v.                                                          Case No.  8:22-cv-683-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

        Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

### I.  Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 264–80).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 216–21, 226–51).  Plaintiff then requested an administrative hearing (Tr. 252–53).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 45–80).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 26–36). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–5). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1977, claimed disability beginning July 22, 2019 (Tr. 264). Plaintiff obtained a high school education (Tr. 305). Plaintiff's past relevant work experience included work as cook and a chemical mixer (Tr. 34). Plaintiff alleged disability due to asthma (Tr. 304).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2020 and had not engaged in substantial gainful activity since July 22, 2019, the alleged onset date (Tr. 28). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: asthma, obstructive pulmonary disorder, type II diabetes mellitus, status-posts right rotator cuff tear, and status-post left epicondylitis (Tr. 28). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 29). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work except that he can only frequently push and pull; he cannot climb ladders, ropes, or scaffolds; he can occasionally perform the remaining postural activities; he can frequently reach and occasionally reach overhead; he cannot be exposed to pulmonary

irritants; and he must avoid exposure to hazards (Tr. 29–30).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 30).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 34).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an addresser and a telephone order clerk (Tr. 34–35).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 35).

### III.    Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397,

1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff raises three issues on appeal: (1) the ALJ erred in analyzing the severity of his asthma and failing to address whether it is medically equivalent to Listing 3.03; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ erred in assessing Plaintiff's subjective complaints. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.   Asthma

First, Plaintiff argues that the ALJ erred in analyzing the severity of his asthma. In particular, Plaintiff argues that the ALJ erred in this respect by (1) failing to evaluate

whether his asthma medically equals Listing 3.03; and (2) improperly making medical judgments regarding the severity of his asthma.

a. Listing 3.03

The Listing of Impairments describes impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. Part 404, Subpart P, App. 1. At step three, Plaintiff has the burden of establishing the existence of an impairment or combination of impairments that meets or equals the criteria of a medical listing in 20 C.F.R. Part 404, Subpart P, App. 1. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The purpose of the medical listings is to "streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). If a claimant establishes that he meets or equals a listing, no further proof of disability is required. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Id.* (quoting 20 C.F.R. § 404.1526(a)). Where a claimant has more than one impairment, and none individually meets or equals a listed impairment, the ALJ must review the symptoms,

signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *Id.*

To meet the requirements of Listing 3.03 for asthma, a plaintiff must have: (A) an $FEV_1$ less than or equal to a particular value (here, 1.92) based on age, gender, and height without shoes; and (B) exacerbations or complications requiring three hospitalizations that last at least forty-eight hours and occur at least thirty days apart within a twelve-month period. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.03. Here, the ALJ found that Plaintiff met Part A of the Listing, but failed to meet Part B (Tr. 29). The ALJ then stated that he "further considered whether the claimant's impairments, considered alone or in combination, equal any listed impairment. The record evidence does not contain the necessary expert medical evidence or administrative finding(s) to support a finding of medical equivalence in accordance with the rules set forth in SSR 17-2p." (*Id.*).

Social Security Ruling ("SSR") 17-2p provides that medical equivalence can be found in three ways:

> 1. If an individual has an impairment that is described in the listings, but either:
>
> > a. the individual does not exhibit one or more of the findings specified in the particular listing, or
> >
> > b. the individual exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing, then we will find that his or her impairment is medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria.
>
> 2. If an individual has an impairment(s) that is not described in the listings, we will compare the findings with those for closely analogous listed impairments. If the findings related to the impairment(s) are at

> least of equal medical significance to those of a listed impairment, we will find that the impairment(s) is medically equivalent to the analogous listing.
>
> 3. If an individual has a combination of impairments, no one of which meets a listing, we will compare the findings with those for closely analogous listed impairments. If the findings related to the impairments are at least of equal medical significance to those of a listed impairment, we will find that the combination of impairments is medically equivalent to that listing.

SSR 17-2p, 2017 WL 3928306, at *2 (Mar. 27, 2017).

Here, Plaintiff argues that the first method applies, as he has the impairment described in Listing 3.03 (asthma) but does not exhibit one or more of the findings specified in the particular listing (the necessary number of hospitalizations detailed in Part B). Plaintiff then goes on to list numerous treatments Plaintiff received for "severe exacerbations" of his asthma during the relevant period, arguing these treatments are at least equal and severity and duration to the listed findings such that a finding of medical equivalency is appropriate. This evidence includes multiple visits to his pulmonologist as well as hospital visits (Doc. 19 at 11–14).

The Commissioner responds that SSR 17-2p lists specific evidentiary requirements necessary to demonstrate that an individual is disabled based on medical equivalency and that the record in this case does not contain any of these evidentiary requirements. On this issue, SSR 17-2p states:

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
>
> 1. A prior administrative medical finding from [a Federal or State agency Medical Consultant] or [Psychological Consultant] from the

initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2. [Medical Expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3. A report from the AC's medical support staff supporting the medical equivalence finding.

2017 WL 3928306, at *3. The Commissioner is correct that the record is devoid of prior administrative findings, medical expert evidence, and any reports from the Appeals Council's medical support staff supporting a medical equivalence finding.

In his Reply, Plaintiff argues that the evidentiary provisions of SSR 17-2p apply only when the ALJ finds that a claimant's impairments are medically equivalent to a Listing (Doc. 27). In other words, Plaintiff argues that the Commissioner is improperly converting the provision into a requirement that a claimant develop the record by obtaining this documentation. Indeed, the ruling does seem to contemplate the ALJ obtaining expert evidence. *Cf.* SSR 17-2p, 2017 WL 3928306, at *4 ("If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment."); *see also Deleon v. Comm'r of Soc. Sec.*, No. 2:20-cv-472-JLB-NPM, 2021 WL 6011104, at *7 (M.D. Fla. Nov. 15, 2021) ("So here, the ALJ could have, but was not required to, consult a medical expert."), *report and recommendation adopted*, 2021 WL 5999283 (Dec. 20, 2021).

As set forth above, with respect to medical equivalency, the ALJ stated that he "further considered whether the claimant's impairments, considered alone or in combination, equal any listed impairment. The record evidence does not contain the necessary expert medical evidence or administrative finding(s) to support a finding of medical equivalence in accordance with the rules set forth in SSR 17-2p." (Tr. 29).  While the ALJ could have requested this expert evidence, he was not required to do so if he did not believe the evidence reasonably supported a finding of medical equivalence.  SSR 17-2p, 2017 WL 3928306, at *4.  Additionally, the claimant has the burden of establishing his impairments equal a listing.  *See Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("[I]f . . . [a claimant] contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.").

Finally, to the extent Plaintiff argues that the ALJ erred because he failed to make detailed findings or explicitly discuss whether his impairments equaled Listing 3.03, this argument is without merit.  The ALJ's conclusion that Plaintiff did not equal that specific listing can be implied from his discussion of the medical evidence relating to his impairments and his general conclusion that Plaintiff did not equal any listing.  *See* SSR 17-2p, 2017 WL 3928306, at *4 ("Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will

provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."); *Johnson v. Barnhart*, 148 F. App'x 838, 842 (11th Cir. 2005) ("The ALJ explained the weight he accorded to certain pieces of evidence and stated that, based on all the record evidence, [claimant's] condition did not medically or functionally equal a listed impairment. This statement is sufficient evidence that the ALJ considered (and rejected) a determination that [claimant's] condition met Listing 103.03(B).");[2] *see also Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("There may be an implied finding that a claimant does not meet a listing."); *Kirkpatrick v. Colvin*, No. 3:15-cv-17-J-JBT, 2015 WL 12851551, at \*2 (M.D. Fla. June 15, 2015) ("[I]t is sufficient that the ALJ adequately discussed Plaintiff's myasthenia gravis, and explicitly found that Plaintiff did not meet any listing.").

Here, the ALJ discussed Plaintiff's asthma—in detail—in support of his RFC finding. For example, the ALJ noted that records showed increasing difficulty with persistent asthma leading up to the alleged onset date, which required specialist intervention (Tr. 30). The ALJ then noted that Plaintiff's treatment progression indicated less than ideal control of symptoms, with ongoing issues with wheezing into 2020, despite an expanding range of prescribed medication (Tr. 31). The ALJ then explicitly stated that "the evidence does not show routine hospitalizations for intractable asthma that required recurrent, in-patient hospital stays over a period of twelve months, suggesting symptoms were tolerable enough for sedentary activities" (Tr. 31).

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

Considering the foregoing, the ALJ adequately articulated his finding that Plaintiff did not equal Listing 3.03 and that finding is supported by substantial evidence.

### b.  Medical Judgments

Next, Plaintiff argues that the ALJ made medical judgments he was not qualified to make regarding the severity of Plaintiff's asthma.[3]  Specifically, Plaintiff states that the ALJ "dismissed" the severity of Plaintiff's symptoms, claiming they were "likely aggravated by poor weight control, due to an evidence of obese body habitus . . . ." (Doc. 19 at 14 (quoting Tr. 31)).  As a result, Plaintiff claims that the ALJ improperly equated obesity to noncompliance with asthma treatment.  Instead, Plaintiff argues that SSR 19-2p required the ALJ to find that Plaintiff's asthma was aggravated as a result of his obesity. SSR 19-2p, 2019 WL 2374244 (May 20, 2019).  The Commissioner responds that the ALJ properly considered the limiting effects of obesity consistent with SSR 19-2p.  The Court agrees.

Plaintiff takes issue with the following statement by the ALJ:

> Abnormalities also appeared in imaging studies, and included chronic mucous plugging and thickening, with air trapping consistent with an asthma diagnosis, but these scans did not suggest more significant issues with definite interstitial lung disease as of November 2019. *That being said, I find it reasonable to conclude that respiratory symptoms and reports of fatigue are [sic] have likely been aggravated by poor weight control, due to evidence of an obese body habitus and body mass index readings that generally fluctuated between 32 and 34kg/m2. (SSR 19-2p).*

(Tr. 31 (emphasis added) (exhibit citations omitted)).  Plaintiff's argument that this statement equates to a finding of noncompliance with treatment and fails to comply with

---

[3] Plaintiff also makes various arguments about the ALJ's subjective complaint analysis in this section.  The Court addresses those arguments in Section C., *infra*.

SSR 19-2p is without merit.  The ALJ noted that Plaintiff's scans did not suggest "more significant issues," and then acknowledged that symptoms *were* likely aggravated by poor weight control.  In other words, the ALJ did in fact acknowledge that obesity increased the severity of Plaintiff's asthma. The ALJ did not equate Plaintiff's obesity to noncompliance with treatment or discredit Plaintiff's subjective complaints because of his obesity.  Instead, the ALJ acknowledged that Plaintiff's asthma was likely aggravated by obesity.  Plaintiff has shown no error and the decision of the Commissioner will not be reversed on this basis.

## B.    RFC

Next, Plaintiff argues that the ALJ's RFC finding that Plaintiff can frequently reach is not supported by substantial evidence.  A claimant's RFC is the most work he can do despite any limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence.   20 C.F.R. §§ 404.1545(a)(2), (e), 416.945(a)(2), (e).   An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence.  *McCruter v.  Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).  In the end, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will

13

be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir.

2010) (the assessment of a claimant's RFC and corresponding limitations are "within the

province of the ALJ, not a doctor.").

Here, with respect to Plaintiff's limitations on reaching, the ALJ stated:

In terms of his musculoskeletal conditions, clinical records and imaging studies show a history of upper extremity injuries, with chronic complications that have lasted into the period in question. Radiological impression from mid-2017 showed a chronic partial thickness tear of the right rotator cuff. He also suffered a left elbow injury, classified as left lateral epicondylitis, which necessitated a debridement and physical therapy in mid-2017. Following more than a month of post-surgical physical therapy, he was still exhibiting left arm tremors and guarding of elbow pain, resulting in a prohibition of left upper extremity use in his prior workplace.

However, this restriction, and any other restriction assigned in his left elbow physical therapy records, were not persuasive. The record shows that the claimant slowly recovered a more robust degree of function in the upper extremities following his injuries. This is evident from his consultative examination in October of 2019, which shows intact grip strength, only slightly diminished strength in the left arm at 4 out of 5, normal strength on the right, and grossly intact range of motion in the upper extremities. Thus, the severe restrictions contain in his prior physical therapy records are no longer consistent with the evidence of record.

I find the evidence most consistent with the reduced range of sedentary exertional capacities detailed in Finding 5, *supra*. [ . . . ] He should push, pull and reach no more than frequently, but overhead reaching should only be performed occasionally [ . . . ] More restrictive reaching, pushing and pulling limitations would not be warranted, given that the claimant retains a significant degree of strength in the upper extremities and continues to perform daily activities that require these nonexertional functions, such as maneuvering dishes into a dishwasher and manipulating a steering wheel while driving.

(Tr. 31–32 (exhibit citations omitted)).

14

The ALJ's finding is supported by substantial evidence. The ALJ discussed Plaintiff's 2019 consultative exam, which showed normal strength (5/5) in his right arm and only slightly diminished strength (4/5) in his left arm (Tr. 763). The 2019 exam also showed that Plaintiff had grossly intact range of motion in the upper extremities (Tr. 765–67).

In support of his argument that the ALJ erred in assessing his reaching limitations, Plaintiff first argues that his testimony is supported by the medical evidence. This argument misses the mark. Plaintiff argues, in essence, that there is evidence in the record that could support a different RFC determination. This is outside of the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' . . . .") (alterations in original). The question is not whether there is evidence in the record supporting a finding that Plaintiff cannot reach, but whether the ALJ's finding that Plaintiff can frequently reach is supported by substantial evidence. Here, for the reasons explained above, it is.

Plaintiff also argues that the ALJ's reliance on Plaintiff's ability to occasionally load a dishwasher and drive to a doctor's appointment to support his RFC finding cannot be sustained. In support of this argument, however, Plaintiff again merely restates that his testimony is consistent with more restrictions than the what the ALJ found to be appropriate. Moreover, as discussed in the next section, the ALJ found Plaintiff's

subjective complaints to be inconsistent with the medical evidence and other evidence, and that finding is supported by substantial evidence. Accordingly, the decision of the Commissioner will not be reversed on this basis.

### C.   Subjective Complaints

Plaintiff's final argument is that the ALJ's reasons for rejecting his subjective complaints are not based on substantial evidence. In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). Once a claimant establishes that his pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints. The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration,

frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, she must articulate explicit and adequate reasons for this decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

SSR 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1513. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, Plaintiff testified that he was exposed to chemicals at his previous job which exacerbated his asthma, which he has had since he was born (Tr. 50–52). After completing regular activities, like sweeping the floor, he is out of breath and very fatigued (Tr. 53). He testified that he uses a rescue inhaler and a nebulizer every day, and has gone to the

emergency room several times in since 2019 (Tr. 53–55).  He also testified that the asthma causes pain and he feels like his lungs are on fire (Tr. 58).

He also testified that he tore his left rotator cuff taking out garbage that was too heavy and his right rotator cuff was torn from being overused at work while his left arm was restricted (Tr. 59).  He also stated that he underwent surgery and then physical therapy on his left elbow (Tr. 59–60).  Plaintiff testified that it would "bother" him to reach both arms forward, overhead, and behind him (Tr. 64).  He can put dishes in the dishwasher, but he does not scrub them (Tr. 65).  He rarely drives, but when he does, he has no problem turning the steering wheel except it does hurt his left side (*Id.*).

The ALJ relied on boilerplate language in assessing Plaintiff's subjective complaints:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 30).  This language directly addresses the Eleventh Circuit's standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1694841 (Apr. 18, 2013).  Here, the Court finds it is.

In evaluating Plaintiff's subjective complaints, the ALJ explained that while Plaintiff had "less than ideal control of symptoms, with ongoing issues" despite an expanding range of medications, the evidence did not show "routine hospitalizations for intractable asthma that required recurrent, inpatient hospital stays over a period of twelve

months, suggesting symptoms were tolerable enough for sedentary activities like driving, watching television and utilizing a computer on a daily basis" (Tr. 31).  The ALJ then explained that, while the "claimant's records indicate ongoing difficulty with shortness of breath with activities like laundry, cleaning and cooking, he has achieved better control of symptoms with Faserna injections, and he does not rely on an assistive device, such as an electric wheelchair, for moving about" (*Id.*).    Finally, with respect to Plaintiff's musculoskeletal conditions, the ALJ stated that any restrictions associated with Plaintiff's physical therapy records were not persuasive because Plaintiff "slowly recovered a more robust degree of function in the upper extremities," as evidenced by his 2019 consultative exam.  Considering this, the ALJ found the evidence most consistent with a reduced range of sedentary work (Tr. 32).

Plaintiff raises various arguments regarding the ALJ's subjective complaint analysis.  First, Plaintiff argues that the fact that he did not require recurrent hospital stays in a twelve-month period and does not use an electric wheelchair or supplemental oxygen does not use does not suggest that he is capable of performing the modest demands of sedentary work.  But the ALJ did not discredit Plaintiff's subjective complaints on this basis alone.  Instead, the ALJ reviewed all the evidence, and found Plaintiff's symptoms not to be as severe as alleged.

Plaintiff then argues that the ALJ erred in addressing his subjective complaints because the ALJ's finding that Plaintiff has "achieved better control of symptoms with Faserna injections" is not supported by substantial evidence.  Plaintiff testified that he began receiving Faserna injections in January 2021 (Tr. 54).  At his March 26, 2021 visit

to his pulmonologist, Plaintiff reported that his coughing and breathing had improved and that he was using albuterol less frequently (Tr. 889).  As a result, this finding is supported by substantial evidence.

Next, Plaintiff argues that the ALJ erred in assessing his subjective complaints because the ALJ's finding that he "slowly recovered a more robust degree of function in the upper extremities" is not supported by substantial evidence. But Plaintiff's 2019 consultative exam showed normal strength (5/5) in his right arm and only slightly diminished strength (4/5) in his left arm (Tr. 763).  The exam also showed that Plaintiff had grossly intact range of motion in the upper extremities (Tr. 765–67).  As a result, this finding is also supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred because the fact that he can drive to doctor's appointments and use a computer does not support a finding that he could perform sustained work activities.  As contemplated by the regulations, the ALJ considered Plaintiff's reported daily activities as one of several factors relevant to his evaluation of Plaintiff's subjective complaints.  In addition to Plaintiff's daily activities, the ALJ considered objective medical evidence and treatment history, as discussed above.  Thus, the ALJ did not err by relying on Plaintiff's reported daily activities as being inconsistent with Plaintiff's limitations.  *See, e.g.*, *Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 522 (11th Cir. 2017) (finding that daily activities such as caring for one's own personal needs, light housework, preparing simple meals, shopping, and visiting with family and friends were inconsistent with the claimant's alleged limitations).

In conclusion, Plaintiff has not shown that the ALJ erred in his analysis of Plaintiff's subjective complaints. *See Holt*, 921 F.2d at 1221. As contemplated by the regulations, the ALJ considered objective medical evidence, treatment history, and Plaintiff's daily activities, and articulated specific and adequate reasons for finding Plaintiff's subjective complaints not entirely consistent with the evidence. *Foote*, 67 F.3d at 1561–62. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.[4]

## V.      Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

   1.  The decision of the Commissioner is affirmed.

   2.  The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

---

[4] The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239.

**ORDERED** in Tampa, Florida, on this 10th day of March 2023.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE